UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
NORMAN CIPRIANO,                   )
                                   )
        Petitioner,                )
                                   )
    v.                             )   C.A. No. 17-377 WES
                                   )
FEDERAL BUREAU OF PRISONS,         )
                                   )
        Respondent.                )
_____)

**ORDER**

WILLIAM E. SMITH, Chief Judge.

On December 6, 2017, Magistrate Judge Patricia A. Sullivan filed a Report and Recommendation ("R&R") (ECF No. 7) recommending that Norman Cipriano's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1) be denied. Having closely reviewed the R&R and the relevant papers, and having heard no objections, the Court ACCEPTS the R&R (ECF No. 7) and adopts its recommendations and reasoning.  Accordingly, the Petition (ECF No. 1) is DENIED.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date:  January 12, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORMAN CIPRIANO, :
    Petitioner, :
 :
v. : C.A. No. 17-377WES
 :
FEDERAL BUREAU OF PRISONS, :
    Respondent. :

# REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    This matter is before the Court on the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, brought by Petitioner Norman Cipriano (ECF No. 1). In 2014, Petitioner was sentenced by this Court to fifty months' imprisonment, followed by three years of supervised release. During 2015 and 2016, he was assigned to a Federal Correctional Institution ("FCI") in Berlin, New Hampshire, where he was housed in a minimum security dormitory. Currently, Petitioner remains in the custody of Respondent Federal Bureau of Prisons ("BOP"), residing at the Houston House, a residential re-entry facility located in Rhode Island. The petition alleges that Petitioner was denied the due process required by the Fifth Amendment of the United States Constitution in connection with discipline imposed on him by BOP while he was at FCI Berlin, resulting in the loss of forty-one days' good conduct time.

    Having exhausted all available appeal rights, Petitioner initiated this action on August 6, 2017. His petition asks the Court to conduct an expeditious hearing, to expunge the Incident Report underlying the discipline from his record and to restore the lost good conduct time. In compliance with the Court's order, Respondent filed its reply to the petition on September 29, 2017. The petition and reply have been referred to me. Having thoroughly reviewed them,

together with all of the attached written material, including the Incident Report and the Discipline Hearing Officer ("DHO") Report, and mindful of the need to resolve the matter with all due speed,[1] I find that BOP's discipline procedures were consistent with the requirements of the Fifth Amendment's Due Process clause. Specifically, I find that:

(1) Petitioner received advance written notice of the violation that was adequate for due process purposes;

(2) Petitioner was afforded an opportunity to call witnesses and present evidence, but declined to do so; and

(3) Petitioner was provided a detailed and specific written statement describing the evidence considered and the reasons for imposing discipline.

Further, I find that the DHO decision was supported by considerably more than the constitutionally-required "some evidence," even if evidence to which he claims he was denied access is disregarded. Based on these findings, I recommend that the petition be denied.

I. BACKGROUND[2]

On the evening of March 22, 2016, a woman called the FCI Berlin control center, and identified herself as Petitioner's wife, Jamie Cipriano. This female caller explained that she was in the midst of divorcing Petitioner, and complained that he was texting her and sending her photographs. She said he was texting her at the same time that she was speaking to the control center but then stopped while she was still on the line. She provided her own phone number, which corresponded to the number Petitioner had supplied to FCI Berlin as the contact for his

---

[1] Apparently, Petitioner's sentence may end as early as February 2, 2018.

[2] The background is drawn from the petition (ECF No. 1) and the reply (ECF No. 5), together with the attachments to each. Principal reliance is placed on the DHO Report (ECF No. 1-1 at 1-3; ECF No. 5-1 at 1-3) and on the Petitioner's Reasons for Appeal and the Acting Regional Director Response (ECF No. 1-1 at 8-13; ECF No. 5-2) which are attached to both the petition and the reply. The Court has also considered the Incident Report, referenced in the petition and attached to the reply (ECF No. 5-1 at 4-6), and two forms – the "Inmate Rights at Discipline Hearing" and "Notice of Disciplinary Hearing" – both of which were signed by Petitioner and are attached to the reply (ECF No. 5-1 at 17-18).

2

wife, as well as the number from which the texts had been coming.  See generally ECF No. 1-1 at 1-3.

Within minutes, correctional officers were dispatched to search Petitioner and his bunk area.  When they arrived, they told Petitioner that his "ex-wife" had called and said he was texting her; Petitioner denied he had an "ex-wife" and denied that he had a phone.  The search resulted in the discovery of a cell phone hidden on the underside of the desk in the cubicle occupied by Petitioner and one other prisoner.  Petitioner denied that the phone was his, and stated (falsely) that he had just moved to that area of the dormitory; his cellmate also denied ownership of the phone.  The officers photographed and seized the phone.  See generally ECF No. 1-1 at 1-3.

BOP sent the phone to its forensic lab for analysis, and turned the matter over to the Office of the United States Attorney, Department of Justice ("DOJ"), for possible criminal prosecution.  Pending the outcome of this referral, BOP's Incident Report was suspended.  ECF No. 1-1 at 2.  One month later, on April 21, 2016, the DOJ reported that it would not prosecute Petitioner.  ECF No. 5-1 at 15-16.  The next day, the BOP received the forensic lab report, which corroborated that the number of the cell phone was the same as that reported by the female caller.  Meanwhile, BOP officials confirmed that Petitioner had lied when he said he had just moved to the cubicle where the phone was found; in fact, he had been there for several months.  In addition, when questioned further, Petitioner admitted that he and his wife were in the midst of a divorce and that he believed she had called "to get him in trouble so she could win their divorce."  ECF No. 5-1 at 5.

Based on these facts, on the next day (April 22, 2016), Petitioner was charged with Possession of a Hazardous Tool, in violation of Code 108 of the Prohibited Acts Code, 28 C.F.R.

3

§ 541.3, which classifies hazardous tools as those most likely to be used in an escape attempt. Petitioner was given a copy of the BOP Incident Report the same day, was advised of his right to remain silent and given an opportunity to make a statement. ECF No. 5-1 at 4-6. On April 27, 2016, Petitioner appeared before a Unit Discipline Committee where he stated that the cell phone was not his and he had been set up. ECF No. 5-1 at 4. The Committee determined that the charges were founded and referred the matter to hearing before a DHO. Also on April 27, 2017, Petitioner signed two forms confirming that he had been advised of his rights at the DHO hearing, including the right to have a staff representative, to call witnesses and to present documentary evidence. ECF No. 5-1 at 17-18. One form advised that, subject to institutional safety, if he identified any witnesses, the DHO would call them and, for any that were unavailable, DHO would try to procure written statements from them. Petitioner indicated he did not wish to call any witnesses and signed both forms. See ECF No. 5-1 at 17-18. The DHO hearing was held nine days later, on May 6, 2016.

Both Petitioner and Respondent have presented the Court with copies of the detailed DHO Report (ECF No. 1-1; ECF No. 5-1) of the May 6, 2016, proceeding. The DHO Report confirms that Petitioner waived his right to be accompanied by a staff representative and did not request that any witnesses be called. In the introduction to the Report, the DHO explained that Petitioner did not receive the Incident Report within twenty-four hours "as established by policy"[3] because of the referral for possible prosecution. ECF No. 1-1 at 2. The DHO Report

---

[3] The Court assumes that the policy to which the parties are referring is embodied in the following regulation:

> The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

4

concludes that this delay did not cause "any undue hardship in your ability to defend yourself," pointing out that Petitioner did not raise "any procedural issue, request witnesses, or present written documentation as evidence." Id.

The summary of the evidence in the DHO Report indicates that Petitioner identified his wife as Jamie Cipriano and provided her phone number – the same number provided by the female caller, which was the same as the one on file with the BOP office. During the hearing, the DHO reviewed the officers' reports regarding the phone call from the female caller, as well as the photographs of the phone and reports about the search of the common area around Petitioner's bunk. The Report itemizes the evidence considered, including Petitioner's false statement about having just moved into the area and his misleading statement that he did not have an "ex-wife." It indicates that the DHO and Petitioner both reviewed the report from the forensic lab, which corroborated the information from the female caller about the source of the texts. In response to viewing the forensic lab report, Petitioner is quoted in the DHO Report as saying, "Oh, I didn't know she contacted you recently, I thought it was a while ago." The DHO Report specifically references Petitioner's description of the area where the phone was located as a "common area."

"[B]ased on the greater weight of evidence," the DHO found that Petitioner committed the prohibited act. ECF No. 5-1 at 3. Finding that the offense was of the "greatest" severity, the DHO imposed on Petitioner the sanctions of sixty days of disciplinary segregation, three months without commissary privileges, six months without phone privileges and the revocation of forty-one days of good conduct time. ECF No. 1-1 at 3.

---

28 C.F.R. § 541.5(a) (2013); see Heavner v. Harmon, No. 3:17-CV-217-M-BN, 2017 WL 1907440, at *2 (N.D. Tex. Apr. 17, 2017), adopted, No. 3:17-CV-217-M, 2017 WL 1906797 (N.D. Tex. May 8, 2017); Rosa v. Grondolsky, No. CIV.A. 13-10496-JGD, 2013 WL 3491077, at *7 (D. Mass. July 9, 2013).

5

Petitioner appealed the adverse decision to the next administrative level, the Acting Regional Director. His appeal asserted that his wife had served him with divorce papers and was calling the prison to make false accusations. ECF No. 1-1 at 8. He also complained that he did not receive the Incident Report within twenty-four hours of the incident, and that he had not been shown the forensic lab report. Id. On June 22, 2016, the Acting Regional Director issued a written decision, denying the appeal and upholding the sanctions. ECF No. 1-1 at 10-11. Regarding the delayed Incident Report, the Acting Regional Director wrote:

> Your contention your due process rights were violated because you did not receive a copy of the incident report within 24 hours is without merit. The record shows the incident report was suspended due to the incident report being referred to FBI/AUSA for criminal prosecution. You received a copy of the incident report within 24 hours of it being released for administrative processing. The DHO adequately documented the delay, and found that it did not impede your ability to adequately represent yourself.

Id. at 10. The Acting Regional Director found that the demands of due process had been satisfied, and that the BOP substantially complied with prison policy. Id. at 11. Petitioner's next appeal was to the BOP's general counsel, which was also denied.

In the petition, Petitioner repeats his central defense that the phone was not his and that it was found in a common area; he claims that he was framed by "another inmate to have Petitioner removed from this prison." ECF No. 1 at 6. He reiterates his allegation that he did not receive the Incident Report until thirty days after the search for the phone, in contravention of BOP policy. With no indication who are the inmates who might have testified but for the delay, he argues that this delay was highly prejudicial to him "due to inmates that could have testified to the phone belonging to another inmate went home or got transferred to another institution." Id. at 7-8. He also asserts that he was not allowed to review the forensic lab report. Id. at 7. And, contrary to his statements to BOP officials, to the DHO, and on appeal to the Acting Regional

Director from the DHO decision, he now contends that the DHO refused to contact his wife during the prison disciplinary process. With no factual support for the assertion, he now claims that she "would have verified that she did not make call to the prison nor did she receive texts, calls, or pictures from Petitioner." Id. at 6. In his request for relief, Petitioner asks for an expeditious hearing and seeks to have the Incident Report expunged from his record and the forty-one days of good conduct time reinstated.

## II.   APPLICABLE LAW

Since the Supreme Court's 1974 decision in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), it has been broadly accepted in this Circuit that prison inmates have a constitutionally-protected liberty interest in good time credits. Francis v. Maloney, 798 F.3d 33, 36-37 (1st Cir. 2015);[4] Ned v. Tatum, 15-cv-178-LM, 2017 WL 3822736, at *3 (D.N.H. May 16, 2017), adopted, 2017 WL 3772656 (D.N.H. Aug. 29, 2017) (citing Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 453 (1985), and Lother v. Vose, 89 F.3d 823, 1996 WL 345958, at *1 (1st Cir. June 25, 1996) (per curiam) (unpublished table decision)); see Mendez v. Martin, C.A. No. 15-408ML, 2016 WL 2849598, at *8 n.14 (D.R.I. Apr. 19, 2016) (in dismissing § 2241 petition for refiling in Pennsylvania, court notes open issue whether accumulation of good time credits gives rise to constitutionally-protected liberty interest). Cases assuming that prison inmates have a liberty interest in good time credits hold that the Fifth Amendment's Due Process clause protects that interest by requiring:

> Where a prison disciplinary hearing may result in the loss of good time credits . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

---

[4] Francis establishes that, in this Circuit, the inconsistent dicta in Pepper v. United States, 562 U.S. 476, 501 n.14 (2011), should not be interpreted as abrogating Wolff. 798 F.3d at 36-37.

Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563-67). These due process rights are often referred to as the "Wolff requirements." E.g., Brennan v. United States, 646 F. App'x. 662, 666 (10th Cir. 2016); Ned, 2017 WL 3822736, at *3.

The case law is well settled that this standard is "extremely limited." Heavner v. Harmon, No. 3:17-cv-217-M-BN, 2017 WL 1907440, at *2 (N.D. Tex. Apr. 17, 2017), adopted, 2017 WL 1906797 (N.D. Tex. May 8, 2017); see Pryor v. Grondolsky, 14-10181-LTS, 2015 WL 1268164, at *2 (D. Mass. Mar. 19, 2015) ("standard is not a demanding one"). "The limited nature of habeas review does not empower a federal district court to perform a de novo review of the merits of routine prison disciplinary determinations." Id. Rather, judicial review must ensure only "that federal constitutional guarantees of due process are observed in the proceedings." Id. The petition should be denied as long as "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Ned, 2017 WL 3822736, at *3 (emphasis in original); Pizarro Calderon v. Chavez, 327 F. Supp. 2d 131, 135 (D.P.R. 2004) (petition denied if minimal due process standards met). This "some evidence" standard may be satisfied with indirect or "meager" evidence, and the evidence may be susceptible to more than one logical interpretation. Ned, 2017 WL 3822736, at *6. "All that is necessary is that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Id.

With the Wolff requirements in mind, the Court next considers each of Petitioner's three grounds for relief and then evaluates BOP's due process compliance in imposing discipline resulting in the loss of good conduct time.

8

## III. ANALYSIS

### A. *Ground One – Failure to Consider Evidence of Common Area and to Contact Witness*

In his first ground for seeking relief, Petitioner complains that the DHO wrongly attributed to him the phone located near his cubicle despite its being found in a "common area," which he claims "every inmate in the unit had access to." He argues that this should have led to a finding that he was being set up by another inmate. He also alleges that he tried to induce the DHO to contact his wife, who, he now claims, would have denied that she was the caller and that she had received texts from Petitioner. Neither allegation comes close to establishing a due process violation.

Petitioner's assertion that he is entitled to habeas relief because the phone was found in a common area amounts to a request that the Court sift through the same evidence weighed by the DHO and perform an improper *de novo* review leading to a different result. That the location where the phone was discovered was a "common area" is noted in the DHO Report, which includes a specific description of the location and its proximity to Petitioner and his cellmate. What matters for due process purposes is that the DHO linked this fact with other evidence, most importantly the evidence regarding the female caller who claimed that she was Petitioner's wife, that they were divorcing and that Petitioner was texting her. This additional evidence is more than sufficient to permit the inference that the phone found near Petitioner's locker was Petitioner's, and did not belong to some other prisoner who also had access to the area. See Ned, 2017 WL 3822736, at *6-7 (no due process violation where no facts presented to permit inference that it was equally likely that other persons with access to common area might have hidden weapons found there). It is beyond the scope of habeas review for the Court to reweigh the evidence concerning the phone's location and reach a different conclusion. Pryor, 2015 WL

9

1268164, at *2; see Heavner, 2017 WL 1907440, at *2 (defense heard and rejected at hearing cannot be basis for due process violation).

Petitioner's belated complaint that the DHO did not contact Jamie Cipriano is equally unavailing. Nine days before the DHO hearing, Petitioner was advised in writing that he could ask the DHO to call witnesses for him, including that efforts would be made to get statements from witnesses who were unavailable. In response, Petitioner signed the form indicating that he did not request any witnesses. ECF No. 5-1 at 18. This decision is confirmed by the DHO Report – it reiterates that Petitioner declined to request any witnesses, and it underscores his decision when considering whether any hardship was caused by the delay in his receipt of the Incident Report. ECF No. 1-1 at 1-2 ("[a]t no time during the DHO hearing did you . . . request witnesses"). Also significant is that, during the DHO hearing and the first level of appeal from the DHO hearing, Petitioner did not dispute that his wife made the call; rather, he argued that she was motivated by animus arising from their divorce. For example, the DHO Report quotes Petitioner as responding to the forensic lab report by saying that he had thought his wife's call had been "a while ago." ECF No. 1-1 at 2. Petitioner's appeal (in his handwriting) to the Acting Regional Director makes no mention of the DHO's refusal to call witnesses but rather argues that "I was served divorce papers at the Camp on 9-6-15 and my wife had been calling the prison making accusations." ECF No. 1-1 at 8. Petitioner's petition before this Court takes the opposite tack – Ground Two is based on the newly-minted claim that his wife should have been called as a witness because she would have denied that she called the prison and that she had received texts from Petitioner.

The clarity of this record makes the Court's work easy. The DHO did not refuse to call witnesses; rather, Petitioner did not request any. See Figueroa v. Vose, 57 F.3d 1061, 1995 WL

352819, at *2 (1st Cir. June 13, 1995) (per curiam) (unpublished table decision) ("The transcript of the disciplinary hearing shows that he never asked the board to call them as witnesses, and so the board obviously did not violate his due process rights in not calling them."); Harrison v. Seay, 856 F. Supp. 1275, 1281 (W.D. Tenn. 1994) ("Plaintiff's failure to request the witness obviously precludes any due process violation."). Nor did the DHO have any obligation spontaneously to perform further investigation by contacting Jamie Cipriano on Petitioner's behalf. Whitmore v. Jones, 490 F. App'x 122, 125 (10th Cir. 2012) ("the opportunity to present documentary and other evidence has never been extended to require prison officials to gather . . . or preserve evidence that a prisoner may later find helpful"); Ned, 2017 WL 3822736, at *4 (due process right to present evidence did not obligate prison officials to collect and analyze fingerprints).

Based on the foregoing, habeas relief based on Ground One should be denied.

### B. *Ground Two – Failure to Allow Petitioner to Review Forensic Lab Report*

The DHO Report states that "[y]ou were shown the Lab report that was created a month later on April 22, 2016 in which the number . . . was retrieved from the cellular telephone sims card that was found in the common area of your assigned bunk." The DHO Report quotes Petitioner's response to being shown the lab report ("I didn't know she contacted you recently, I thought it was a while ago") and notes that this response detracted from his credibility. ECF No. 1-1 at 2. In his handwritten "Reason for Appeal" to the Acting Regional Director, Petitioner claimed that, "[a]t no time was I shown an analysis of a SIM card showing me any of my contact info. I was only shown a list of numbers provided by my wife, which were on my prison phone list." ECF No. 1-1 at 8. In the petition, Petitioner argues that the DHO gave great weight to a

11

"report of forensics from the SIMS card from the phone yet Petitioner was never allowed to review this report."[5]

Respondent argues that the DHO Report unambiguously establishes that Petitioner did have access to the forensic lab report, described as a "Summary of Forensics Laboratory on SIMS card." According to the DHO Report, the lab report did not provide a comprehensive analysis of the content of the phone, but rather reflected only the phone number retrieved from the device. While the DHO may withhold evidence (for example from a confidential informant), 28 C.F.R. § 541.8(f)(6), that is not what happened here – the DHO Report states that the lab report reflecting the limited information extracted from the phone (its number) was shown to Petitioner. Beyond his unadorned post-hearing claim that he was not shown "an analysis on a sim card," Petitioner provides nothing to contradict the DHO Report's statement that he was shown the lab report, or to demonstrate that he challenged the reliability of the lab report's conclusion during the DHO hearing. See Figueroa, 1995 WL 352819, at *3 (no due process violation arising from limited access to confidential report where hearing record establishes that prisoner did not question its reliability, or request access to it, during hearing). Nor has Petitioner demonstrated that he affirmatively requested access to the forensic lab report summary until after the DHO hearing was concluded.[6] See id.

While I find that these reasons are sufficient for the Court to reject Ground Two as a basis for habeas relief, I rely principally on a more substantial problem with Petitioner's claim

---

[5] Petitioner also complains that the forensic lab report was "never made part of the record." This charge appears well founded – neither Petitioner nor Respondent has supplied a copy of the forensic lab report to the Court. With no copy in the record, Petitioner has made a Freedom of Information Act ("FOIA") request for the forensic lab report, but has yet to receive it. ECF No. 1 at 7; ECF No. 1-1 at 5. However, BOP's failure to make an item of evidence "part of the record" does not transgress the due process requirements applicable to a prison discipline proceeding. Whitmore v. Jones, 490 F. App'x 122, 125 (10th Cir. 2012).

[6] As far as the Court can discern, the first such request was his FOIA request. ECF No. 1-1 at 5.

12

that he was denied access to a document considered by the DHO. At bottom, I find that this claim fails because, even if the Court assumes, contrary to the DHO Report, that Petitioner was denied access to the forensic lab report despite his request to review it, such denial of access would not amount to a violation of due process. This finding rests on the sufficiency of the remainder of the evidence as summarized in the DHO Report. When there is other evidence supporting the disciplinary decision, due process is satisfied without the need for a review of the prison's reasons for non-disclosure. Turner v. Caspari, 38 F.3d 388, 393 (8th Cir. 1994). "Any other rule would violate the core principle that the some evidence standard 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.'" Ned, 2017 WL 3822736, at *4-5 (quoting Hill, 472 U.S. at 455).

Here, I find the other evidence to be more than sufficient to satisfy the quantum of "some evidence" as required in Wolff. It may be briefly summarized:

- The caller who identified herself as Petitioner's wife, said they were divorcing, and claimed Petitioner was texting her;

- The contemporaneous discovery of the phone hidden in the common area of Petitioner's cubicle;

- the photographs of the phone;

- The confirmation of the caller's identity as Petitioner's wife through her phone number in prison records, and by Petitioner's statements;

- Petitioner's corroborative statement that he and Ms. Cipriano were involved in divorce proceedings;

- Petitioner's admission that he believed Ms. Cipriano made the accusation based on animus arising from their divorce; and

- Petitioner's dissembling statement about his tenure in the cubicle.

This supplies ample support for the DHO Report's conclusion, even without the corroboration in the forensic lab report that the source of the texts was the phone found in Petitioner's cubicle.

13

Accordingly, Ground Two fails to raise the specter of a due process violation and habeas relief based on it should be denied.

### C. Ground Three – Failure to Deliver Incident Report in Twenty-Four Hours

Petitioner received the Incident Report in the morning of April 22, 2016, a full month after the phone was seized from his bunk area, but less than twenty-four hours after notification that criminal prosecution had been declined by the DOJ. ECF No. 1-1 at 2; ECF No. 5-1 at 16. In the petition, he alleges that the delay violated BOP policy and prejudiced him because inmates who could have testified about the phone had since left the facility. ECF No. 1 at 8. However, Petitioner provides nothing more – that is, he does not indicate who these inmates are and why he did not list them as witnesses when given the opportunity to do so prior to the DHO hearing. Nor does he deny that he was told immediately (on March 22, 2016) about the caller who claimed to be his wife and about the phone found in his cubicle; accordingly, it is clear that he was aware of the need to find witnesses and evidence from the earliest possible moment.

Courts have consistently held that the regulation providing that an inmate will "ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident," 28 C.F.R. § 541.5(a), by its terms is not mandatory, and, in any event, does not "create an enforceable right." Rosa v. Grondolsky, 13-10496-JGD, 2013 WL 3491077, at*8 (D. Mass. July 9, 2013) (written notice of the incident within twenty-four hours neither legally required nor required by regulatory language); see Heavner, 2017 WL 1907440, at *3 (violation of prison regulations not actionable in habeas context as "failure to follow such procedures does not necessarily 'establish a violation of due process, because constitutional minima may nevertheless have been met'"); Nerlich v. Quintana, Civ. No. 12-CV-325-JMH, 2013 WL 875909, at *5 (E.D. Ky. Mar.7, 2013) (assuming BOP regulation "required delivery of an incident report within 24

14

hours in all instances, the Constitution does not, and thus a failure to adhere to the regulation does not create a claim of constitutional dimension").

Due process requires only that the report setting out the charge must be provided at least twenty-four hours in advance of the hearing. Figueroa, 1995 WL 352819, at *1 (citing Wolff, 418 U.S. at 564) (federal law "requires only that inmates be given written notice of the charges against them at least 24 hours before the disciplinary hearing"). From the perspective of due process, the purpose of this notice requirement "is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are." Wolff, 418 U.S. at 564. A delay following an incident, particularly a delay resulting from an ongoing investigation, is not inimical to that purpose, since further investigation "may reshape the nature of the charges or the evidence relied upon." Id. Therefore, while the Supreme Court has held that procedural due process requires that an inmate be given at least twenty-four hours to prepare for his hearing on a disciplinary charge, see id., there is no constitutional requirement that a prisoner be given notice within twenty-four hours of the staff believing that a prisoner may be charged in the future with a disciplinary infraction. Rosa, 2013 WL 3491077, at *7.

Petitioner's reliance on the delay also founders on his failure to provide any substance to his claim that it resulted in witnesses being lost. McGuiness v. Dubois, 75 F.3d 794, 800 (1st Cir. 1996) (prisoner needs to make proffer of who live witnesses are and what they would say). Juxtaposed with Petitioner's signature affirming that he did not wish to call any witnesses on BOP's form, which had space for listing the names of any witnesses and advised of the right to have them called, including that BOP would attempt to procure statements from any who had become unavailable, the claim of lost witnesses due to delay rings hollow indeed.

Based on the foregoing, the Court finds that the one-month delay in delivering the Incident Report to Petitioner did not violate Petitioner's right to due process. Habeas relief based on Ground Three should be denied.

### D. *Compliance with <u>Wolff</u> Requirements*

Stepping back from Petitioner's specific challenges to the constitutionality of the process he was afforded, the Court finds that, in this instance, BOP's discipline procedures appear to have been well within the bounds of the requirements of the Fifth Amendment's Due Process clause, as established by the United States Supreme Court in <u>Hill</u>, 472 U.S. at 453, and in its seminal decision in <u>Wolff</u>, 418 U.S. at 558. Specifically, I find that Petitioner received adequate advance written notice of the violation in that he was given the written Incident Report within twenty-four hours of the DOJ's decision not to prosecute and two weeks in advance of the DHO hearing. See <u>Figueroa</u>, 1995 WL 352819, at *1. He was afforded an opportunity to call witnesses and present evidence, but declined to do so, <u>see id.</u>, instead improperly (and belatedly) arguing that BOP should have contacted witnesses for him. And, after the DHO hearing, he was provided with the detailed and specific written statement set out in the DHO Report, which described the evidence considered and the reasons for imposing discipline. <u>See generally</u> <u>Hill</u>, 472 U.S. at 454. I further find that, if the corroborative conclusion in the forensic lab report is ignored, the DHO decision nonetheless remains supported by considerably more than the constitutional minima of "some evidence," so that due process is not implicated by Petitioner's claim that BOP refused to allow him to review it. <u>See</u> <u>Ned</u>, 2017 WL 3822736, at *3 (quoting <u>Hill</u>, 472 U.S. at 455-56).

Based on these findings, and mindful that judicial review in a habeas case must not amount to a reevaluation of the prison's disciplinary determination, but is limited "to ensur[ing]

16

that federal constitutional guarantees of due process are observed in the proceedings," Pryor, 2015 WL 1268164, *2, I recommend that the petition be denied.

## IV. CONCLUSION

Based on the foregoing, I recommend that Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) be denied.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 6, 2017